347 A.2d 701
**James F. FRICKERT**
v.
**DEITER BROS. FUEL CO., INC. et al., Appellants.**

Supreme Court of Pennsylvania.

Argued June 26, 1975.

Decided Nov. 26, 1975.

Donald B. Corriere, Haber & Corriere, Bethlehem, for appellants.

Jackson M. Sigmon, Bethlehem, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This appeal arises from an action in equity between appellee James F. Frickert and appellants James A. Deiter and William A. Deiter concerning ownership of shares of Deiter Bros. Fuel Co., Inc. Appellee claims that, pursuant to a shareholders' restrictive agreement he is entitled to purchase one-third of the shares of fuel company stock held by appellants.

Appellants contend: (1) that section 711 of the Decedents, Estates and Fiduciaries Code [1] vests exclusive jurisdiction over this action in the orphans' court division and that therefore the equity division lacked subject matter jurisdiction; and (2) that the shareholders' restrictive agreement did not entitle appellee to purchase any shares of the corporation. The trial court resolved both issues against appellants,[2] and this appeal followed.[3] We affirm.

On July 1, 1971, William J. Deiter and Samuel R. Deiter were the sole shareholders of Deiter Bros. Co., Inc. Each owned 10,000 shares. On that date, the two shareholders and their wives entered into an agreement entitled "Shareholders Restrictive Agreement." Appellee

1. 20 Pa.C.S.A. § 711 (Supp.1975).

2. The decree nisi was dated June 4, 1974. On February 5, 1975, the court en banc dismissed appellants' exceptions and confirmed the decree nisi with a modification concerning the manner in which the purchase price of the stock was to be determined.

3. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(4), 17 P.S. § 211.202(4) (Supp.1975).

James F. Frickert and Samuel R. Deiter's two sons, appellants James A. Deiter and William A. Deiter, are also parties to the agreement and are referred to as the "key employees" of the corporation. Paragraph 1 of the agreement provides that the corporation's shares cannot be transferred "except as permitted by this agreement and in accordance with its terms." Paragraph 2 provides that while both shareholders are alive, each shareholder may transfer his shares only after offering them first to the corporation and then to the other shareholder. Paragraph 4 provides that, upon the death of one shareholder, his estate must sell and the corporation must buy his shares. It further provides that, upon the death of the surviving shareholder, his estate must sell his shares to the three "key employees" equally. The agreement contains no provision concerning an inter vivos transfer of shares by the surviving shareholder.

While they were both alive, neither shareholder attempted an inter vivos transfer. On November 19, 1972, William J. Deiter died.[4] On February 21, 1973, the surviving shareholder, Samuel R. Deiter, sold all of his shares to his sons, appellants James A. and William A. Deiter. Appellee was excluded from all aspects of that transaction. On March 18, 1973, Samuel R. Deiter died. Appellants James A. Deiter and William A. Deiter have refused to allow appellee to purchase stock of the corporation in equal shares with them.

Appellants' first claim is that the orphans' court division of the court of common pleas has exclusive jurisdiction of this action pursuant to section 711 of the Decedents, Estates and Fiduciaries Code.[5] We do not agree.

4. His shares have not yet been sold to the corporation as required by the agreement because of a dispute over the valuation placed upon those shares. That dispute is not a subject of this law suit.

5. 20 Pa.C.S.A. § 711 (Supp.1975).

The two subsections upon which appellants rest this argument provide:

"[. . . the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:]"

"(13) Specific performance of contracts. To enforce specifically the performance by either party of any agreement made by a decedent to purchase or sell real or personal property."

. . . . . . . .

"(17) Title to personal property. The adjudication of the title to personal property in the possession of the personal representative or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death."

Subsection (13) is inapplicable, however, because it encompasses only those suits in which specific performance is sought either by or against a decedent's estate. Here the performance sought by appellee is the transfer to him of shares of stock registered in the names of appellants James A. and William A. Deiter and are in their possession. No specific performance by the estate of Samuel R. Deiter is sought.

Subsection (17) does not apply because Samuel R. Deiter did not own any of the shares of the corporation at the time of his death. Neither Samuel R. Deiter nor his estate had, or claimed to have, possession of, or an interest in, the shares after February 21, 1973, when he transferred all of his shares to his sons. Since this action does not involve any matter specified in section 711, it is not a suit over which the orphans' court division has exclusive jurisdiction.

The shareholders' restrictive agreement was expressly intended to encompass all transfers of Deiter Bros. Fuel Co., Inc. stock. Paragraph 1 states that no

transfer of the corporation's shares may be made "except as permitted by this agreement." However, the agreement fails to provide expressly for an inter vivos transfer of shares by one stockholder after the death of the other shareholder and is therefore subject to more than one possible construction.

In *Consolidated Tile & Slate Co. v. Fox,* 410 Pa. 336, 339, 189 A.2d 228, 229, 230 (1963), we stated:

". . . if the language of the contract is ambiguous and susceptible of two interpretations, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not likely enter into, the construction which makes it rational and probable must be preferred [citations omitted] . . . . Moreover, if the language of a contract is ambiguous, parol testimony is admissible to aid in its construction [citations omitted]."

Similarly, in *Unit Vending Corp. v. Lucas,* 410 Pa. 614, 617, 190 A.2d 298, 300 (1963), we said:

"The intention of the parties is paramount and in construing such a contract, the court will adopt the interpretation, which under all of the circumstances of the case, ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished [citations omitted]."

See also *United Refining Co. v. Jenkins,* 410 Pa. 126, 189 A.2d 574 (1963); 4 Williston on Contracts, § 610B.

The agreement shows, and testimony of the scrivener supports, that a principal objective of the parties was to ensure that the "key employees" would succeed to ownership of the corporation in equal shares and at the same time. When William J. Deiter died the agreement prohibited him from bequeathing his shares to his son-in-law, the appellee. The agreement provided that upon the

death of Samuel R. Deiter, appellee would be entitled to purchase shares equally with Samuel R. Deiter's sons. The parties clearly did not intend to give the surviving shareholder the option to circumvent the protections afforded by the agreement by transferring his shares to his own children before his death. The ambiguity in the agreement must be resolved to effectuate the manifest intentions of the parties and to avoid an unreasonable and improbable result which would frustrate a primary objective of the parties.

The trial court was correct in interpreting the agreement to permit an inter vivos transfer by the surviving shareholder subject to the same restrictions and requirements as would have pertained if he had owned the shares at the time of his death. Appellants James A. Deiter and William A. Deiter are parties to the agreement, and the trial court properly ordered them to transfer to appellee one-third of the shares owned by each of them at the price and under the terms provided in the agreement.

Decree affirmed. Each party pay own costs.

POMEROY, J., filed a concurring opinion.

POMEROY, Justice (concurring).

While I agree with the result reached by the Court, I believe it has misperceived the problem involved. The Court concludes that the shareholders' restrictive agreement contains an inherent "ambiguity" because it fails to allude to the possibility of an inter vivos transfer of shares by the surviving shareholder. This omission does not result in ambiguity; it is merely indicative of the apparent fact that the parties did not anticipate such an eventuality. As the Court quite correctly points out, the "manifest intentions" of the parties are clear: they wished to create an equal right of purchase among the three "key employees." If the parties' intentions are

clear, I fail to see how the contract may be referred to as "ambiguous."

The failure of the parties to advert to the situation which actually developed in this case does, however, call into play the doctrine of "necessary implication." As the Superior Court has stated, "The law is clear that 'In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract' ". *D. B. Van Campen Corp. v. Building and Const. Trades Council of Phila.*, 202 Pa.Super. 118, 122, 195 A.2d 134, 136 (1963). *See also* 16 Am.Jur.2d, Contracts, sec. 255 at 649; 17 C.J.S. Contracts § 328 at 778; 8 P.L.E. Contracts, sec. 164 at 209. In the present case, a restriction on the capability of the surviving shareholder to make an inter vivos transfer of his shares to some but not all the key employees must be inferred from the purpose of the contract; otherwise, the other provisions of the agreement designed for their protection would be rendered meaningless.