**Scott M. WURTZ and Susan Wurtz, Plaintiffs,**

v.

**AMERICAN HONDA MOTOR CO., INC., Defendant.**

**Civil Action No. 96–6332.**

United States District Court, E.D. Pennsylvania.

April 8, 1997.

Craig Thor Kimmel, Catherine J. Cullen, Kimmel and Silverman, Blue Bell, PA, for Plaintiff.

Richard B. Wickersham, Jr., Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for Defendant.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

On March 8, 1996, plaintiffs purchased a new 1995 Honda Passport LX for $27,184.90. In connection with the purchase of the vehicle, the manufacturer of the automobile, who is the defendant in this case, issued plaintiffs several written warranties including a three-year or 36,000 mile warranty, as well as other standard warranties fully outlined in the warranty booklet. On April 22, 1996, plaintiffs returned the automobile to an authorized service and repair facility of the manufacturer for repair of an alleged defective alignment and chassis. During the next two months, plaintiffs took the vehicle back to the authorized repair facility on two occasions for unsuccessful attempts to cure the defective alignment and chassis, as well as to repair defective tire wear.

On September 18, 1996, plaintiffs commenced the instant civil action seeking recovery under Pennsylvania's Automobile Lemon Law, the Magnuson–Moss Warranty Act, unspecified provisions of the Uniform Commercial Code, and Pennsylvania's Unfair Trade Practice and Consumer Protection Law.

Presently before the Court is the defendant's motion to dismiss, or in the alternative for partial summary judgment as to count one of the complaint, brought under the Pennsylvania Lemon Law. For the reasons that follow, the motion for partial summary judgment will be granted.[1]

### I.

Defendant has moved the Court to dismiss count one of the complaint, or in the alternative for partial summary judgment (doc. 3), plaintiffs have filed a response thereto (doc. no. 4), and defendant has filed a reply. (doc. no. 5) "[I]f matters outside the pleadings are presented to the district court on a motion under [Rule 12(b)(6) ], and the Court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles." *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir.1992) (quoting 6 Moore's Federal Practice, § 56.02 at 56–27 (1991)). *See also Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). Since both parties in this case have presented matters outside the pleadings regarding the motion to dismiss, the Court will treat the motion to dismiss as a motion for summary judgment.

### (a)

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). An

---

1. Plaintiff has advised the Court that he seeks leave to amend the complaint pursuant to Rule 15(a) of the Federal Rule of Civil Procedure to include as co-plaintiff in this case, Susan Wurtz, who was co-purchaser of the automobile. Defendant does not oppose the motion, and, therefore, the motion will be granted. Since the claims of both plaintiffs are identical, the Court will adjudicate the motion for summary judgment in connection with the claims of both plaintiffs (the "plaintiffs").

issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law, *see id.* at 248, 106 S.Ct. at 2510, and all inferences must be drawn, and all doubts resolved, in favor of the nonmoving party. *See e.g., Gans v. Mundy*, 762 F.2d 338, 341, *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, a nonmoving party resisting a motion for summary judgment under Rule 56 cannot rest on its pleadings nor "rely merely upon bare associations, conclusory allegations or suspicions." *Gans*, 762 F.2d at 340 (quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981)). In "order to demonstrate the existence of a genuine issue of material fact, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant," *Olson v. General Electric Astrospace*, 101 F.3d 947, 951 (3d Cir.1996), and "must make a showing sufficient to establish the existence of every essential element to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also, Anderson v. Liberty Lobby Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2553. There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* To the contrary, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* In this regard, the "moving party need not support its motion [for summary judgment] with evidence disproving the nonmoving party's claim, but need only 'show—that is point out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554). *See also Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir.1996).

(b)

■ Under § 1958 of the Lemon Law, "any purchaser of a new motor vehicle who suffers any loss due to nonconformity of such vehicle as a result of the manufacturer's failure to comply with this act may bring a civil action in a court of common pleas and, in addition to other relief, shall be entitled to recover reasonable attorneys' fees and all court costs." 73 P.S. § 1958. However, § 1959 of the statute provides that if an automobile manufacturer has established an informal dispute settlement procedure which complies with the applicable regulations enacted by the Federal Trade Commission, 16 C.F.R. Pt. 703, then plaintiffs cannot thereafter file a Lemon Law claim without first resorting to such procedure.[2] Simply put,

---

2. Section 1959 of the Lemon Law provides as follows:

§ 1959. **Informal Dispute Resolution Procedures.** If the manufacturer has established an informal dispute settlement procedure which complies with the provisions of 16 C.F.R. Pt. 703, as from time to time amended, the provisions of [section 1958] shall not apply to any

purchaser who has not *first resorted* to such procedure as it relates to a remedy for defects or conditions affecting the substantial use, value, or safety of the vehicle. The informal dispute resolution procedure shall not be binding on the purchaser, and, in lieu, of such settlement, the purchaser may pursue a remedy under [section 1958].

§ 1959 of the Lemon Law prohibits the purchaser of an automobile from filing a Lemon Law claim where the manufacturer has established (1) that its informal settlement procedure complies with certain FTC rules; and (2) that plaintiffs have not first resorted to such procedure.

## II.

According to the defendant, because its informal settlement procedure complies with 16 C.F.R. Pt. 703, and since plaintiffs did not first resort to such procedure under § 1959 of the statute prior to filing this lawsuit, the Court should grant the motion for summary judgment as to plaintiffs' Lemon Law claim. Plaintiffs counter that the defendant's informal settlement procedure does not comply with 16 C.F.R. Pt. 703, and therefore, according to plaintiffs, they were under no statutory obligation to first resort to it before bringing the Lemon Law claim. Plaintiffs further contend that, even if the informal settlement program complies with the applicable regulations, they have satisfied the "first resort" requirement under the statute.

### A.

■ The defendant's informal procedure program consists of arbitration under the auspices of the Better Business Bureau. The defendant has submitted a sworn affidavit from a senior attorney with the Better Business Bureau, which states that the arbitration program involved "has been established to comply with the provisions of 16 C.F.R. Pt. 703," and further explains that for each of the past eleven years an outside auditor has confirmed that the arbitration program complies with the FTC regulations. Since the defendant has pointed to evidence that it has established a dispute resolution program and that the arbitration program thereunder complies with 16 C.F.R. Pt. 703, the defendant as the moving party in this matter has met its burden of informing the Court of the basis for its motion and identifying those portions of the record which demonstrate the absence of the genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S.Ct. at 2553.

Once the movant has satisfied its initial burden, Rule 56 requires that the nonmovant "must go beyond the pleadings, and by its own affidavits, or by the depositions, answers to interrogatories, and admissions in file, designate specific facts showing there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. This the plaintiffs have failed to do. Rather, in response to the motion for summary judgment, the plaintiffs proffered a letter from an FTC investigator, which was previously submitted to the district court in another case, in support of their contention that the FTC has already found the arbitration program at issue here fails to comply with 16 C.F.R. Pt. 703. This letter from the FTC investigator does not constitute admissible evidence for Rule 56 purposes. *See* Fed.R.Civ.P. 56(c) (requiring non-movant to submit affidavits, depositions, answers to interrogatories, or admissions on file to counter movant's showing).

Moreover, even if the Court were to consider the letter from the FTC investigator, the Court disagrees with plaintiffs' contention that the letter supports their claim. In the first instance, and as the letter explains, "this opinion is that of [FTC] staff and, as such, is neither attributable to nor binding on the [FTC] itself or any individual Commissioner." Doc. 4, Exhibit D at 1. Therefore, on its face, the letter does not support the position that the FTC has opined on the defendant's BBB Auto Line Program.

More importantly, even assuming that the letter could be considered by the Court for Rule 56 purposes and that it is probative of the FTC's views on this matter, the content of the letter is wholly inconclusive. *See e.g., Jenkins v. General Motors Corp.,* 1995 WL 422680 at *3 (E.D.Pa.) (finding as "inconclusive" a similar letter submitted by the same FTC investigator in another Lemon Law case). In the penultimate paragraph of the letter, it states that, "[u]nder these circumstances, the Commission would not make a determination as to the BBB Auto Line Program's compliance with the requirements of Rule 703 to Nissan or American Honda Vehicles" Doc. 4, Exhibit D at 2.

73 P.S. § 1959 (emphasis added).

Therefore, the Court finds that plaintiffs as nonmovant have failed to point to any evidence in the record that raises a genuine issue of material fact concerning defendant's compliance with 16 C.F.R. Pt. 703.[3]

## B.

■ The second issue is whether the plaintiffs first resorted to the arbitration process before filing this action. The "requirement that [plaintiffs] first resort to the alternative [arbitration] procedure [of the automobile manufacturer] is one that must be met in good faith." *Rudder v. American Honda Motor Company,* 1995 WL 216955 at *7 (E.D.Pa.). *See also, Jenkins,* 1995 WL 422680 at *2 (explaining that under § 1959 of the Lemon Law plaintiff must "first resort" in good faith to alternate dispute resolution procedures).[4]

Pennsylvania courts have defined the duty of good faith in other contexts as " 'honesty in fact in the conduct or transaction concerned,' " *Somers v. Somers,* 418 Pa.Super. 131, 135, 613 A.2d 1211, 1213 (1992) (citing 13 Pa.C.S. § 1201); *see also, Kaplan v. Cablevision of PA, Inc.,* 448 Pa.Super. 306, 317, 671 A.2d 716, 721 (1996), and as doing "those things that according to reason and justice [a party to a contract] should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Somers,* 418 Pa.Super. at 135, 613 A.2d at 1213 (quoting *Frickert v. Deiter Bros. Fuel Co., Inc.,* 464 Pa. 596, 603, 347 A.2d 701, 705 (1975)). An example of lack of good faith is

"failure to cooperate in the other party's performance [of the contract]." *Kaplan,* 448 Pa.Super. at 317, 671 A.2d at 721; *See also, Somers,* 418 Pa.Super. at 135, 613 A.2d at 1213.

In the context of the Lemon Law, courts have found that a purchaser who invokes the informal procedure established by a manufacturer with the BBB for handling claims under the warranties but who does not receive a response to the claim from the BBB within the forty days provided for under the BBB's rule is acting in good faith if the purchaser proceeds to suit without further compliance with the informal procedure. *See e.g., Rudder,* 1995 WL 216955 at *7 (collecting cases). Likewise, a purchaser who agrees to make her arbitration claim in writing and who also agrees to furnish her vehicle for inspection has acted in good faith even if she later refuses to attend the arbitration hearing in person. *See e.g., Jenkins,* 1995 WL 422680 at *3. In both of these cases, the purchaser can be said to have made an honest and meaningful effort to carry out her duty of "first resort" to arbitration under the statute. By contrast, where the purchaser refused to present her claim in writing or to appear in person at the hearing or to make her vehicle available for inspection, the court found such a blanket refusal to constitute bad faith since by doing so the purchaser rendered the informal dispute procedure nugatory. *See Rudder,* 1995 WL 216955 at *7.

■ In the instant case, it is undisputed by the parties that plaintiffs (1) flatly refused to make their vehicle available for inspection; (2) refused to attend the arbitration hearing;

---

3. The Third Circuit has counselled district courts that the question of whether the BBB Auto Line arbitration program complies with 16 C.F.R. Pt. 703 "is a matter for the Federal Trade Commission, rather than [the federal courts], to decide." *Harrison v. Nissan Motor Corp.,* No. 95–1300, Slip Op. at 4 n. 2 (3d Cir., Oct. 9, 1996), *vacated, rehearing granted,* 97 F.3d 722 (Nov. 4, 1996). Because the regulatory compliance issue is not a material fact in dispute in the instant case, the Court concludes that the Third Circuit's cautionary instruction in *Harrison* is not implicated here.

4. One court in this district has explained the legislative aim behind the "first resort" requirement under § 1959 as follows:

The legislature deferred judicial involvement in actions such as this one in order to provide car buyers with a way to resolve their complaints with car manufacturers quickly and efficiently. Car buyers would incur significant delay in resolving their disputes if their only remedy were a civil cause of action. The Lemon Law does not, however, prohibit customers from filing suit.... Thus, if plaintiffs are dissatisfied with the arbitrator's settlement recommendation, they may then bring a civil cause of action. However, in order to take this step, plaintiffs must first resort to the informal dispute resolution procedure. *Rudder v. American Honda Motor Company, Inc.,* 1995 WL 216955 at *6–7.

(3) and agreed only to present their claim in writing. Likewise, it is uncontested that subsequent to plaintiffs' refusal to make their vehicle available for inspection, they were informed that if they did not make their vehicle available for inspection, the informal dispute resolution procedure in their case would be terminated. *See* Doc. 4, Exhibit A at 1. Even after receiving this second notice, plaintiffs again refused to make the vehicle available for inspection or to attend the arbitration hearing.

In defense of their decision not to participate in the informal resolution process, plaintiffs contend that their claim was ineligible for arbitration. Plaintiffs emphasize that under the Lemon Law a purchaser of a defective automobile is entitled to recover the full purchase price of the vehicle including all collateral charges. Because defendant's agreement with the BBB Auto Line arbitration program reportedly excludes such collateral charges as taxes, fees, and finance charges, plaintiffs have declared themselves ineligible for arbitration. Plaintiffs are not free to disregard the direct mandate of the statute to submit the claim to the informal settlement procedure simply because they believe that the procedure will not make them whole. *See Morganstein v. General Motors Corp.*, 1994 WL 558822 at *3 (E.D.Pa.). "This [exact same] self declared ineligibility does not excuse plaintiff[s] from resorting first to the informal dispute resolution procedures as the statute requires." *Rudder*, 1995 WL 216955 at *7. Also, according to plaintiffs, "the legislature did not intend for a consumer to participate in a protracted arbitration hearing and vehicle inspection, which would require an additional two days off from work, when the arbitration has no chance of resolving the dispute." Doc. 4 at 12. Again, plaintiffs' view of the informal procedure's likelihood of success does not entitle them to bypass the legislative mandate.

Finally, plaintiffs explain that they failed to participate in the BBB arbitration because, "during the additional significant delay the BBB hearing [would] [cause], plaintiff[s] would be forced to drive the unsafe vehicle on our Commonwealth's roads." Doc. 4 at 12–13. Presumably, as a result of this safety concern, plaintiffs have stopped driving the vehicle in question on the Commonwealth's roads. If this is so, a request by plaintiffs that the inspection take place where the car is garaged rather than at some other location where it would have necessitated driving the unsafe vehicle would have been reasonable. The record does not indicate, however, that any such request was made by plaintiffs or that it would have been futile to have made such a request.

Because plaintiffs failed to make their vehicle available for inspection and refused to attend the arbitration hearing, and instead would agree only to present their claim in writing, the Court concludes that plaintiffs failed to undertake an honest and meaningful effort to "first resort" to the informal dispute resolution procedure before filing the claim as required under § 1959 of the Lemon Law.

### III.

Defendant is entitled to summary judgment as to count one because there is no genuine issue for trial as to whether the informal dispute settlement procedure complies with 16 C.F.R. Pt. 703, nor as to the failure by plaintiffs to satisfy the "first resort" requirement under § 1959. Therefore, judgment shall be entered in favor of defendant and against plaintiffs on count one.

An appropriate order will issue.

### ORDER

**AND NOW**, this 8th day of **April, 1997**, upon consideration of defendant's motion for partial summary judgment (doc. no. 3), plaintiffs' response thereto (doc. no. 4), and defendant's reply thereto (doc. no. 5), and plaintiff's motion for leave to amend the complaint (doc. no. 4), and defendant's response thereto (doc. no. 5), it is hereby **ORDERED** that the respective motions are **GRANTED** for the reasons stated in the Court's memorandum of this date. It is **FURTHER ORDERED** that judgment is hereby entered in favor of defendant and against plaintiffs on count one.

**AND IT IS SO ORDERED.**